## UNITED STATES *v.* HOLTE.

ERROR TO THE DISTRICT COURT OF THE UNITED STATES FOR THE EASTERN DISTRICT OF WISCONSIN.

No. 628.   Argued January 8, 1915.—Decided February 1, 1915.

A woman who is transported in violation of the White Slave Traffic Act of 1910 may be guilty of conspiracy with the person transporting her to commit a crime against the United States under § 37 of the Penal Code of March 4, 1899.

THE facts, which involve the construction of the White Slave Traffic Act of 1910 and of § 37 of the Penal Code, are stated in the opinion.

*Mr. Assistant Attorney General Wallace* for the United States:

The woman subjected to an unlawful interstate transportation may, if a guilty participator, be indicted as a conspirator with the person causing her to be transported.

The court below misapplied the doctrine that, where a concert of action or a plurality of agents is essential to complete an offence, such agents cannot be indicted for a conspiracy to commit that offence. See Wharton's Criminal Law, 11th ed., § 1502.

*Chadwick* v. *United States,* 141 Fed. Rep. 236; *Dietrich* v. *United States,* 126 Fed. Rep. 664, and *United States v. N. Y. C. & H. R. R.,* 146 Fed. Rep. 303, are decisive against the application of that doctrine to this case. See also *Ex parte Lyman,* 202 Fed. Rep. 303, construing § 138, Penal Code; *The Queen* v. *Whitchurch,* 24 L. R. Q. B. Div. 420; *State* v. *Crofford,* 133 Iowa, 478; *State* v. *Heugin,* 110 Wisconsin, 189, 244; *Hannon* v. *Commonwealth,* 14 Pa. St. 226; *Thomas* v. *United States,* 156 Fed. Rep. 897, 903; *Drew* v. *Thaw,* 235 U. S. 432, holding that it is perfectly possible to enact that a conspiracy to accomplish what an individual is free to do shall be a crime.

*Concursus necessarius* is not an essential to the offence defined by § 2 of the White Slave Act. See H. R. No. 47, 61st Cong., 2d Sess., p. 11; *Hoke* v. *United States,* 227 U. S. 320; *Bennett* v. *United States,* 194 Fed. Rep. 630; *S. C.,* 227 U. S. 333; *United States* v. *Westman,* 182 Fed. Rep. 1017.

The offence of conspiracy to commit the main offence is not legally identical with that offence as defined by § 2 of the White Slave Act. As it is not identical, the woman transported may be punished, if a guilty party to a criminal plan for her own unlawful transportation. See *Gavieres* v. *United States,* 220 U. S. 342; *Heike* v. *United States,* 227 U. S. 131, 144; *United States* v. *McAndrews Co.,* 149 Fed. Rep. 836.

The case is not within the exception of *concursus neces-sarius*. The rule of diversity of offences, and not the above exception, must be applied. The case at bar responds completely to every test under the diversity rule.

As the law stood before the White Slave Act, any person, man or woman, who wilfully planned to commit any offence against the United States was subject to punishment under § 37, Penal Code. In creating the new offence under § 2 of the White Slave Act, Congress had no purpose to amend the conspiracy statute so that it should read "any offence against the United States, save only that defined by the White Slave Traffic Act;" nor any purpose to give the woman transported a license to plan with others to devote her body to prohibited sexual uses; nor any purpose to give her in advance a full pardon for any such after conspiracy.

Section 37, Penal Code, automatically operates on new offences from time to time, *United States* v. *Stevenson*, 215 U. S. 202; *Curley* v. *United States*, 130 Fed. Rep. 1, and will punish persons planning for the commission by another person of an offence against the United States.

The indictment here contains the essential averment of a plan and agreement by both defendants that one should commit the offence of unlawfully transporting defendant—an averment that would have no place in an indictment against the former for unlawfully transporting her. And had the indictment omitted the first, third, and fourth overt acts (showing actual after transportation), the second (the ticket purchase) alone would have completed the conspiracy offence. On trial none other than the second overt act need be proven. If the others were proven, the later consummation of the main offence by Laudenschleger could not swallow up, or give immunity to, the earlier completed crime of conspiracy. *Heike* v. *United States*, 227 U. S. 131, 144; *Curley* v. *United States*, 130 Fed. Rep. 1; *United States* v. *Stamatopolous*, 164

Fed. Rep. 524; *Solander* v. *People*, 2 Colorado, 48; *State* v. *Crofford*, 133 Iowa, 478.

Though the penalty provisions of the crime punished by § 2 were limited exclusively to procurers, no corresponding limitation is to be found in § 37, which, being aimed at every person, must apply to the woman transported. *United States* v. *Portale*, 235 U. S. 27; *United States* v. *Lewis*, 235 U. S. 282.

It is not the policy of the law to suffer people to, with impunity, jointly plan the commission of crime. *Drew* v. *Thaw*, 235 U. S. 432. It is often but a step from plan to performance, and if people could, without risk, jointly plan, such plans would be more frequent, and when developed, might appear so inviting as to themselves induce performance. Where, as here, the large purpose of the law was to reach those systematically conducting the traffic—and system always demands plan—there could have been no thought of making this particular crime an exception to the general prohibition of the conspiracy statute.

This view is strengthened by the thought that because practically the same language is found in §§ 2 and 3 of the Immigration Act as amended March 26, 1910, 36 Stat. 263, the application of the principle here contended for would materially aid, through the enforcement of that act also, in the accomplishment of the results sought by the Paris Conference treaty of July 25, 1902, 35 Stat. 1979.

No appearance or brief filed for defendant in error.

MR. JUSTICE HOLMES delivered the opinion of the court.

This is an indictment for a conspiracy between the present defendant and one Laudenschleger that Laudenschleger should cause the defendant to be transported from Illinois to Wisconsin for the purpose of prostitution,

contrary to the act of June 25, 1910, c. 395; 36 Stat. 825.
As the defendant is the woman, the District Court sustained a demurrer on the ground that although the offence could not be committed without her she was no party to it but only the victim. The single question is whether that ruling is right. We do not have to consider what would be necessary to constitute the substantive crime under the act of 1910, or what evidence would be required to convict a woman under an indictment like this; but only to decide whether it is impossible for the transported woman to be guilty of a crime in conspiring as alleged.

The words of the penal code of March 4, 1909, c. 321, § 37, 35 Stat. 1088, are "conspire to commit an offence against the United States" and the argument is that they mean an offence that all the conspirators should commit; and that the woman could not commit the offence alleged to be the object of the conspiracy. For although the statute of 1910 embraces matters to which she could be a party, if the words are taken literally, for instance, aiding in procuring any form of transportation for the purpose; the conspiracy alleged, as we have said, is a conspiracy that Laudenschleger should procure transportation and should cause the woman to be transported. Of course the words of the penal code could be narrowed as we have suggested, but in that case they would not be as broad as the mischief and we think it plain that they mean to adopt the common law as to conspiracy and that 'commit' means no more than bring about. For as was observed in *Drew* v. *Thaw*, 235 U. S. 432, a conspiracy to accomplish what an individual is free to do may be a crime, *Reg* v. *Mears*, 4 Cox. C. C. 423; 2 Den. C. C 79; *Reg* v. *Howell*, 4 F. & F. 160, and even more plainly a person may conspire for the commission of a crime by a third person. We will assume that there may be a degree of coöperation that would not amount to a crime, as where it was held that a purchase of spirituous liquor from an unlicensed vendor

was not a crime in the purchaser although it was in the seller. *Commonwealth* v. *Willard,* 22 Pick. 476. But a conspiracy with an officer or employé of the government or any other for an offence that only he could commit has been held for many years to fall within the conspiracy section, now § 37 of the penal code. *United States* v. *Martin,* 4 Cliff. 156, 164; *United States* v. *Bayer,* 4 Dillon, 407, 410; *United States* v. *Stevens,* 44 Fed. Rep. 132, 140; *State* v. *Huegin,* 110 Wisconsin, 189, 246. So a woman may conspire to procure an abortion upon herself when under the law she could not commit the substantive crime and therefore, it has been held, could not be an accomplice. *The Queen* v. *Whitchurch,* 24 Q. B. D. 420, 422; *Solander* v. *The People,* 2 Colorado, 48, 63; *State* v. *Crofford,* 133 Iowa, 478, 480.

So we think that it would be going too far to say that the defendant could not be guilty in this case. Suppose, for instance, that a professional prostitute, as well able to look out for herself as was the man, should suggest and carry out a journey within the act of 1910 in the hope of blackmailing the man, and should buy the railroad tickets, or should pay the fare from Jersey City to New York, she would be within the letter of the act of 1910 and we see no reason why the act should not be held to apply. We see equally little reason for not treating the preliminary agreement as a conspiracy that the law can reach, if we abandon the illusion that the woman always is the victim. The words of the statute punish the transportation of a woman for the purpose of prostitution even if she were the first to suggest the crime.—The substantive offence might be committed without the woman's consent, for instance, if she were drugged or taken by force. Therefore the decisions that it is impossible to turn the concurrence necessary to effect certain crimes such as bigamy or duelling into a conspiracy to commit them do not apply.

*Judgment reversed.*

VOL. CCXXXVI—10

Mr. Justice McReynolds took no part in the consideration and decision of this case.

Mr. Justice Lamar, with whom Mr. Justice Day concurs, dissenting.

I dissent from the conclusion that a woman can be guilty of conspiring to have herself unlawfully transported in interstate commerce for purposes of prostitution.

Congress had no power to punish immorality and certainly did not intend by this act of June 25, 1910 (36. Stat. 825) to make fornication or adultery, which was a state misdemeanor, a Federal felony punishable by $5,000 fine and five years' imprisonment. But when it appeared that there was a traffic in women to be used for purposes of prostitution, debauchery and immoral purposes, Congress legislated so as to prohibit their interstate transportation in such vicious business. That there was such traffic in women and girls; that they were "literally slaves," "owned and held as property and chattels," and that their traffickers made large profits, is set out at length in the Reports of the House and Senate Committees (61st Congress, 2d Session) recommending the passage of the bill. So that an argument based on the use of the words "slave," "enslaved," "traffic in women," "business in women," "subject of transportation" and the like,—which might otherwise appear to be strained,—is amply justified by the amazing facts which those reports show as to the existence and extent of the business and the profits made by the traffickers in women. The argument based on the use of these words, and what they imply, is further justified by the fact that the statute itself declares (§ 8) that it shall be known as the "White Slave Traffic Act." In giving itself such a title the statute specifically indicates that, while of right, woman is not an object of merchandise or traffic, yet for gain she has by

some been wrongfully made such for purposes of prostitution—and that trade Congress intended to bar from interstate commerce.

The Act either applies to women who are willingly transported or it does not. If it does not apply to those who willingly go (47 H. R. 61st Cong. 2d Session, p. 10) then there was no offence by the man who transported her or in the woman who voluntarily went,—and, in that event there was, of course, no conspiracy against the laws of the United States in her agreeing to go. The indictment here, however, assumes that the Act applies not only to those who are induced to go, but also to those who aid the panderer in securing their own transportation. On that assumption, every woman transported for the purposes of the business stands on the same footing and cannot by her consent change her legal status. And if she cannot be directly punished for being transported, she cannot be indirectly punished by calling her assistance in the transportation a conspiracy to violate the laws of the United States. For if she is within the circle of the statute's protection she cannot be taken out of that circle by the law of conspiracy and thus be subjected to punishment because she agreed to go.

The statute does not deal with the offence of fornication and adultery, but treats the woman who is transported for use in the business of prostitution as a victim—often a willing victim but nevertheless a victim. It treats her as enslaved and seeks to guard her against herself as well as against her slaver; against the wiles and threats, the compulsion and inducements, of those who treat her as though she was merchandise and a subject of interstate transportation. The woman, whether coerced or induced, whether willingly or unwillingly transported for purposes of prostitution, debauchery and immorality, is regarded as the victim of the trafficker and she cannot therefore be punished for being enslaved nor for consenting and agree-

ing to be transported by him for purposes of such business. To hold otherwise would make the law of conspiracy a sword with which to punish those whom the Traffic Act was intended to protect.

The fact that prostitutes and others have used this statute as a means by which to levy blackmail may furnish a reason why that should be made a Federal offence, so that she and they can be punished for blackmail or malicious prosecution. But those evils are not to be remedied by extending the law of conspiracy so as to treat the enslaved subject of transportation as a guilty actor in her own transportation; and then punish her because she agreed with her slaver to be shipped in interstate commerce for purposes of prostitution. Such a construction would make every willing victim indictable for conspiracy. Even that elastic offence cannot be extended to cover such a case.

There are no decisions dealing directly with the question as to whether a woman assisting in her own illegal transportation can be prosecuted for conspiracy. There are, however, a number of authorities dealing with somewhat analogous subjects. For example, in prosecutions for abortion "the woman does not stand legally in the situation of an accomplice, for although she no doubt participated in the immoral offence imputed to the defendant, she could not have been indicted for the offence. The law regards her as the victim rather than the perpetrator." *Dunn* v. *People*, 29 N. Y. 523; *Commonwealth* v. *Wood*, 11 Gray, 85; *State* v. *Hyer*, 39 N. J. Law, 598; *State* v. *Murphy*, 27 N. J. Law, 112, 114; *Commonwealth* v. *Follansbee*, 155 Massachusetts, 274; *State* v. *Owens*, 22 Minnesota, 238, 244; *Watson* v. *State*, 9 Tex. App. 237; *Keller* v. *State*, 102 Georgia, 506, 510 (seduction). *Contra* apparently in England and Colorado. *Queen* v. *Whitchurch*, 24 Q. B. D. 420; *Solander* v. *People*, 2 Colorado, 48. So, too, a person who knowingly purchases liquor from one

unauthorized to sell it is not guilty of a criminal offence and is not an accomplice. *State* v. *Teahan*, 50 Connecticut, 92, 100; *Commonwealth* v. *Pilsbury*, 12 Gray, 127; *People* v. *Smith*, 28 Hun, 626; affirmed on opinion below, 92 N. Y. 665; *State* v. *Baden*, 37 Minnesota, 212.

Where the purchaser of liquor sold in violation of law was prosecuted for inducing the seller to commit a crime, the court said:

"Every sale implies a purchaser; there must be a purchaser as well as a seller, and this must have been known and understood by the legislature. Now, if it were intended that the purchaser should be subject to any penalty, it is to be presumed, that it would have been declared in the statute, either by imposing a penalty on the buyer in terms, or by extending the penal consequences of the prohibited act, to all persons aiding, counselling or encouraging the principal offender. There being no such provision in the statute, there is a strong implication, that none such was intended by the legislature." *Commonwealth* v. *Willard*, 22 Pick. 479. *United States* v. *Dietrich*, 126 Fed. Rep. 667, though not directly in point sheds light on the subject. There two persons were indicted under Rev. Stat. 5440 for conspiring to violate that law of the United States (Rev. Stat. 1781) which makes it a criminal offence to agree to give or to receive a bribe. The court held that agreeing to give or receive a bribe was the substantive offence and not a conspiracy. For when an offence, as bigamy or adultery, requires for its completion the concurrence of two persons, "the Government cannot evade the limitations by indicting as for a conspiracy."

And in *Queen* v. *Tyrrell*, 1 Q. B. 711 (1894), where a girl under 15 years of age was prosecuted for inciting a man to commit adultery with her, one of the judges considered that she could not be found guilty because she was under the age of consent, and the other said that the statute did not apply because "there is no trace in the

statute of any intention to treat the woman or girl as criminal."

Applying these cases, it appears that under the White Slave Traffic Act there must be a woman who is transported and a person who compels or induces her to be transported or who aids her in such transportation. "There is no trace in the statute of any intention to treat the women or girls as criminals" for being transported, nor for agreeing that they will be transported, nor for aiding in the transportation. And if, as said in *Commonwealth* v. *Willard*, 22 Pick. 479, Congress had intended that they should be subject to indictment for conspiracy "*it would have so declared by extending the penal consequences of the prohibited act to all persons aiding, counselling or encouraging the principal offender.* There being no such provision in the statute, there is a strong implication that none such was intended by the legislature."

To this may be added the practical consideration, that any construction making the woman liable for participation in the transportation will not only tend to prevent her from coming forward with her evidence, but in many instances she will be in position to claim her privilege and can refuse to testify on the ground that she might thereby subject herself to prosecution for conspiracy in that she aided in the violation of the law, even though it was intended for the protection of her unfortunate class.

The woman, whether treated as the willing or an unwilling victim of such transportation for such business purpose, cannot be found guilty of the main offence nor punished for the incidental act of conspiring to be enslaved and transported. Indeed, if she could be so punished for conspiring with her slaver, the fundamental idea that makes the act valid would be destroyed. She would cease to be an object of traffic; and instead of being the subject of illegal transportation would—not be transported by a slaver as an object of interstate commerce,

so as to be subject to regulative prohibitions under the Commerce Clause—but would be voluntarily traveling on her own account, and punishable by the laws of the State for prostitution practiced after her arrival.

I am authorized to say that MR. JUSTICE DAY concurs in this dissent.