## GEBARDI v. UNITED STATES.
### No. 4649.

Circuit Court of Appeals, Seventh Circuit.
April 2, 1932.

Rehearing Denied May 3, 1932.

ALSCHULER, Circuit Judge, dissenting.

618

Hamlin & Cleary, of Chicago, Ill. (Harry F. Hamlin, of Chicago, Ill., and Charles G. F. Wahle, of New York City, of counsel), for appellant.

George E. Q. Johnson, U. S. Atty., and Daniel Anderson, Asst. U. S. Atty., both of Chicago, Ill.

Before ALSCHULER, EVANS, and SPARKS, Circuit Judges.

EVANS, Circuit Judge (after stating the facts as above).

■ The attack on the indictment and part of appellants' assault on the sufficiency of the facts to support the conviction may be treated together. Their position may be stated thus: A and B are not guilty of a conspiracy to violate section 398, title 18, USCA, upon a showing that A, a married man, pursuant to agreement between them, caused B, a woman, to be transported from state C to state D that the said A and B might have sexual relations in state D.

This contention we dispose of without discussion on authority of United States v. Holte, 236 U. S. 140, 35 S. Ct. 271, 59 L. Ed. 504, L. R. A. 1915D, 281. Counsel for appellants have advanced arguments not considered in the opinion in said case, but we are not prepared to reject the authority for such reason. In fact, we are unable to say that the arguments which appellants make in this case were not advanced in the Holte Case, although they were not considered in the opinion. See, also, Corbett v. United States (C. C. A.) 299 F. 27; O'Leary and Sullivan v. United States (C. C. A.) 53 F.(2d) 956.

■ *Sufficiency of the Evidence.* Aside from certain statements made after the three trips were completed (the subject of another assignment of error, and therefore now excluded in considering the evidence), it is argued by appellants that the only proof tending to establish the conspiracies was to be found in the evidence which established the substantive crime; that is, the violation of the so-called Mann Act. In short, it is argued that, even though A, a married man, be guilty of transporting B, a woman, from one state to another for immoral purposes, such evidence is insufficient to establish the crime of conspiring to commit said substantive crime by the said two parties. This court has on several occasions held that proof of the substantive offense alone is not sufficient to establish the crime of conspiracy to commit such offense. Biemer v. United States (C. C. A.) 54 F.(2d) 1045; Allen v. United States (C. C. A.) 4 F.(2d) 688.

Whether the rule to the effect that proof establishing the substantive offense is in and of itself insufficient to establish the conspiracy to commit the offense is technically and in all instances correct, we need not decide. Certainly instances may be readily suggested where it would be well-nigh impossible for the Government to establish the substantive offense without furnishing proof of a conspiracy to commit the offense. Likewise, many cases may be readily conceived where the proof of the substantive offense would not suggest, to say nothing of establish, the crime of conspiracy. In this case, there was evidence which, together with the proof of commission of the substantive offense, not only supports the charge of conspiracy, but persuasively establishes its existence. When, as in the instant case, it is shown that A, a married man, purchased for himself and B, a woman, tickets on railroad trains, which were used to transport, and did transport, both A and B from one state to another, and it further appeared that their trip was for immoral purposes, and that, while on their trip, they lived as husband and wife, and it further appeared that the two parties met at a depot in the city of Chicago to take the special through train upon which A had secured passage for both of them, credulity would be strained beyond the cracking point to accept as true the suggestion that said parties met, thus prepared to make the trip, accidentally rather than premeditatedly.

In the instant case, it further appeared that, before starting on their trips, Gebardi secured and paid for a room in a hotel in Chicago which Rolfe occupied; that, before starting on the trips, Gebardi purchased the tickets which provided for the passage, together with sleeping car service on trains leaving at a certain hour from a certain station; that on the date and at the time and at the place designated in the city of Chicago both parties appeared. Unexplained and unchallenged by either appellant, this statement of facts justifies, if it does not

necessitate, a finding of prearrangement; that is, a planning, a confederacy—a conspiracy, as charged in the indictment.

■ It is further argued, however, that, if any conspiracy were shown, it was a single one and not three separate ones. Again the record is barren of proof on the part of either appellant which disputes, explains, or qualifies the inferences which arose from the undisputed facts established by the Government. This evidence, produced by the prosecution, consisted of railroad tickets, Pullman tickets, the testimony of hotel-keepers, railway and Pullman employees, and certain notes which passed between appellants. The court was amply justified in finding, we think, that, when the parties left Chicago for Miami on the 18th of December, they did not contemplate a trip on January 25th from Chicago to Jacksonville, Fla. This second trip was separate and distinct from the first one and was undertaken pursuant to plans perfected by appellants after the first plan had been carried out in whole or in part. Nor is there any evidence from which the court might have found that the conspiracy included, not only the said trips on the two different dates from Chicago to Miami and from Chicago to Jacksonville, a month apart, but that said appellants should go from Gulfport to Chicago. The trips were entirely separate; the actions of Gebardi in securing the transportation in each instance were separate and disassociated one from the other; and we see no escape from the finding that the three trips were separate and the conspiracies preceding them were separate and distinct, one from the other.

■ It is needless to further observe that this court's review of the record was for the limited purpose of ascertaining whether any evidence appeared to support the trial court's finding (a jury having been waived), not to make a finding of fact.

■ *Rulings on Admission of Evidence.* Over objection, statements made by each appellant to police officers on February 27, 1929, were received in evidence. Appellants argue that the statements were prejudicial and not receivable against both appellants, because the conspiracy, if any existed, was at an end before they were made. Appellant Rolfe's statement was made February 27 at the office of Commissioner Stege of the detective bureau. Gebardi was not present. Gebardi's statement was made on the same day in a room in the Stevens Hotel where the two appellants were living as husband and wife at the time. From the statement of Gebardi, it was inferable that appellant Rolfe was present at the time it was made.

Nothing appeared in either statement which was not conclusively established by other testimony. No evidence was given by either appellant on the trial, and the Government's case thus uncontradictedly established the trips, established the immoral cohabitation under assumed names, as husband and wife, and this was what both of the statements objected to, disclosed. The statement of each appellant thus voluntarily made, even though to a police officer investigating a state crime, was admissible against the party making it, regardless of whether the conspiracy had terminated. Likewise, the statement made by Gebardi in the presence of Rolfe was admissible against both of them. Rolfe's own statement, admissible against her, was but a restatement of what Gebardi said in the presence of the officer with Rolfe present.

■ Moreover, it does not appear so conclusively as to bar these statements that the last conspiracy had ended when the statements were made. One count of the indictment charged a conspiracy to violate the Mann Act by Gebardi's transporting Rolfe on January 25 from Gulfport, Miss., to Chicago for immoral purposes. When was this conspiracy at an end? When was the substantive crime completed? Appellants contend that Chicago was their home, and the substantive crime, as well as the conspiracy (conceding both to be established), was ended upon their arrival in Chicago. Proof does not support this argument. The evidence does not show Gebardi's residence any more definitely than it does his real name. Statements made by both parties to the hotel clerk and postmen in the South left his residence and his name involved in doubt. But, if it be admitted that Chicago was his residence, it does not follow that the S Hotel in Chicago where he lived with Rolfe, as man and wife, was his home, in view of other evidence that he had a wife and child living somewhere else in Chicago.

■ The foregoing observations respecting the statements made by appellants apply to the evidence of the police officers and witnesses who were present at the time the statements were made or immediately preceding their making. The same principle applies to the testimony of the Miami policeman. This testimony bore upon the immoral purpose for which Rolfe was transported and was necessary to establish the

relation between the conspiracy and the substantive offense. Likewise, the exhibit objected to—namely, a postcard of the Illinois Central Railway with a love note thereon addressed to Mr. D'Oro—was receivable for the same purpose, in view of the other proof that appellants registered in hotels in the South as Mr. and Mrs. Vincent D'Oro. The testimony was not received to establish the conspiracy as such, nor the transportation as such. It was admitted because it tended to establish that the transportation, proved by other testimony, was for immoral purposes.

Inasmuch as the conspiracy could be established only by showing that the object thereof was to violate the Mann Act, it was incumbent on the Government to show the alleged unlawful enterprise contemplated transportation *for immoral purposes.* In other words, the charge necessitated proof (a) that Gebardi and Rolfe conspired to have Gebardi transport Rolfe from one state to another, and (b) that such transportation was for immoral purposes. While the proof of the fact (b) was ultimately established to a moral certainty, the Government was at liberty to introduce all its evidence bearing upon such issue, including circumstantial evidence from which logical inferences were deducible pointing strongly to such immoral purpose. Likewise, it cannot be said that the evidence showed conclusively that the conspiracy was ended at a time when the substantive offense was being committed, at which time the statements of the coconspirators were made.

Other assignments of error dealing with rulings on evidence and the sufficiency of the proof to establish three separate conspiracies, as well as the existence of any of the conspiracies, have been duly considered and rejected.

The judgment is affirmed.

ALSCHULER, Circuit Judge (dissenting).

It seems to me the evidence tended to show only the substantive offense denounced by the "White Slave Act," but nothing beyond. There was evidence indicating that this man and woman, long and intimately acquainted in Chicago, Ill., left there December 22, 1928, and rode together in a sleeping car to the far Southeast, staying together as husband and wife at Miami, Fla., and at other places, and no doubt having their adulterous relations as an object of their journey. On January 24, 1929, they returned to Chicago, and the next day again left together for the South. After several stops they came to Edgewater Gulf, Miss., where they stayed together at a hotel for a few days, arriving at Chicago January 31. They went to a hotel there, living together for about four weeks, when they were arrested. There is evidence that at Edgewater Gulf Gebardi ordered and paid for tickets to Chicago, but no evidence to show who bought the tickets on either trip from Chicago, or that either of them transported or caused to be transported, or combined, confederated, or conspired with themselves or with any one else to transport the other. All of this evidence would tend directly to establish the substantive offense; and, had there been proof that he bought the tickets for the journeys from Chicago, it would have been but further evidence of the substantive offense.

It has been decided that evidence which shows only the commission of a substantive offense falls short of showing a conspiracy to commit the offense. United States v. Heitler, 274 F. 401 (D. C.); Salla v. United States, 104 F. 544 (C. C. A. 9); Linde v. United States, 13 F.(2d) 59 (C. C. A. 8) —wherein were cited the Heitler case, Stubbs v. United States, 249 F. 571 (C. C. A. 9), and Bell v. United States, 2 F.(2d) 543 (C. C. A. 8); Dickerson v. United States, 18 F.(2d) 887 (C. C. A. 8). This court has so held in Allen v. United States, 4 F.(2d) 688, and Biemer v. United States, 54 F.(2d) 1045, cited in the majority opinion.

If, as is alleged and as the government sought to establish, they were to travel with the intent of having these adulterous relations, the consent of the parties was, in the nature of things, necessary to be shown as a part of the substantive offense. To the extent, therefore, that this consent might be inferred from the fact that they rode together and actually sustained adulterous relations, it would be only further proof of the substantive offense.

But inference or even direct proof of her willingness to travel with him falls short of proof that they conspired together that she be transported. The statutory crime is in narrow compass. It is the transportation or the causing to be transported for the indicated purpose. If the party charged did not transport the woman or cause her to be transported, there is no crime committed under this law, regardless of what else happens. A woman transporting herself for the improper purpose shown does not violate the

act. Her transportation must be by or caused by another, thus requiring on her part a degree of co-operation or concert for the commission of the substantive crime, unless the transportation was by intimidation, force, or fraud, which is not here claimed or shown. That same co-operation necessary to indicate the substantive crime will not alone serve to show a conspiracy to commit it.

But I do not believe that under the facts here appearing the charge of conspiracy would in any event lie against this woman, however sustainable against the man, if it appeared (which it did not) that he had conspired with a third person to effect her unlawful transportation. The majority opinion is rested on the authority of United States v. Holte, 236 U. S. 140, 35 S. Ct. 271, 272, 59 L. Ed. 504, L. R. A. 1915D, 281, which dealt with a demurrer by the woman to an indictment of herself and a man charging them with conspiracy to cause her to be transported interstate for purposes of prostitution. The court said it did not have to consider what evidence would be necessary to convict a woman under such an indictment, "but only to decide whether it is impossible for the transported woman to be guilty of a crime in conspiring as alleged."

If the hypothetical case which was stated in that opinion indicates the general class of cases which the court had in mind as such where the transported woman might be guilty of conspiracy to have herself transported, it is so far from the class indicated by the facts in the instant case as quite to exclude it. Here we are not dealing with the indictment merely, but with the evidence. I cannot believe that, where all that the record shows is the likelihood that before such a journey actually commenced the woman manifested a willingness to undertake it, her crime of conspiracy thereby appears.

Let another case be supposed. A hectic Chicago youth overpersuades his fair and perhaps innocent inamorata into consenting that he drive her to Gary, Ind., there to indulge in sexual relations with him. He commits the overt act of telephoning her to learn if she is ready to start, but she declines to go, and the project is at an end. Has she thereby committed the crime of conspiracy? Yes—if the Holte case is to be applied as the prosecution here contends, and as was held in Corbett v. United States (C. C. A. 9) 299 F. 27. No—if the statute and the Holte case must be so limited as would make impossible such a travesty as her conviction for conspiracy in the case I have stated.

Nothing appears here which is more incriminating than my illustrative case. Proof of the substantive act only has no bearing on the conspiracy save as it may supply the essential element of an overt act. The personality of the alleged conspirators is immaterial. They may be lamblike and sweet, as in my supposed case may be assumed, or long steeped in moral depravity, as the evidence tends to show these parties were. The most that is claimed to be shown against them is that they undertook these travels for their own delectation through sex relations with each other.

I do not believe that the statute or the Holte case contemplate that upon such facts conspiracy of the woman to be transported could be predicated. I am of opinion that this woman should not have been convicted of conspiracy, and, there being no evidence that Gebardi conspired with any one else, he too should not have been convicted on this charge.

But assuming conspiracy was shown, I do not believe the evidence shows a series of conspiracies, unless it may be said that each time the persons in their travels approached and crossed another state line or halted in their journey a new conspiracy to further transport her is thereby presumptively manifested.

If a conspiracy is necessarily to be presumed from the substantive acts shown, it is far more reasonable to presume that there was a single general conspiracy to travel together interstate for this unlawful purpose than that a new conspiracy was formed for each section of their travels. The necessary contention that upon this evidence there appears one conspiracy to transport the woman from Chicago, and a separate conspiracy to transport her back to Chicago, should find refutation in its mere statement.

For the purposes of justifying the admission of certain statements of appellants made after their arrest and about four weeks after their final return to Chicago, it is suggested in the majority opinion that at the time the statements were made the conspiracy was still afoot. If for this purpose the conspiracy remained in continuous being, it should not be held to have been twice theretofore terminated in order that each subsequent move might be regarded as the object of a brand-new conspiracy.

To my mind, the judgment against these appellants should be reversed in toto, but in any event to the extent that more than one conspiracy has been adjudged.