Ethel HAZO, Appellant,

v.

Margaret E. GELTZ et al.

No. 75–1915.

United States Court of Appeals, Third Circuit.

Argued Jan. 20, 1976

Decided June 17, 1976.

---

Stanley M. Stein, Feldstein, Bloom, Grinberg, Stein & McKee, Pittsburgh, Pa., for appellant.

Angelo C. Procopio, Burkardt, Procopio & Burr, Pittsburgh, Pa., for appellee Geltz.

Herman C. Kimpel, Dickie, McCamey & Chilcote, Pittsburgh, Pa., for appellee Burkardt.

Norman Paul Wolken, Wolken & Landy, Pittsburgh, Pa., for appellee Telford.

## OPINION OF THE COURT

Before HUNTER, BIGGS and GARTH, Circuit Judges.

BIGGS, Circuit Judge.

This is an appeal by the plaintiff, Ethel Hazo, from a judgment of the United States District Court for the Western District of Pennsylvania dismissing her, action under 42 U.S.C. §§ 1983, 1985(3) and 28 U.S.C. § 1343. On March 14, 1973, Hazo and Geltz, private citizens, entered into an agreement whereby Geltz agreed to invest three thousand dollars in the Moses Hazo Company with the understanding that Geltz could request that her investment be returned at the end of six months. Geltz eventually made a request for refund and, failing to have her investment returned, minus expenses as stipulated in the contract, she filed an action in assumpsit on November 8, 1973, in the Court of Common Pleas of Allegheny County, claiming the sum allegedly due her. On December 27, 1973, Geltz's attorney, Burkardt, obtained judgment by default against Hazo for the full sum, *viz.*, three thousand dollars and costs. Under this judgment, Burkardt caused to be executed a levy upon the personal property of Hazo. The executions and levies were made by Deputy Sheriff Telford under Pa.R.Civ.P. 3102, 3128, 42 P.S. It would appear that a previous levy was made on a judgment obtained by ITT and that the property was put up for sale for execution under both levies on April 17, 1974.

Since the complaint was dismissed, we must assume that the following three factual allegations made by Hazo are correct: First, that service by an unspecified person was made on a tenant of Hazo and not on her; second, at the sale, Deputy Sheriff Telford refused to take a check from Hazo, thus preventing her from bidding on the property, but did take a check from Burkardt. As a result, Burkardt was the only bidder, paying a little more than ninety-nine dollars for a property that Hazo's complaint valued at thirty-five thousand dollars. Third, public notice of the sheriff's sale failed to inform as to the precise nature of the Hazo items sold. Hazo contends that only a partial listing of her property was made.[1]

The complaint is an example of inartistic and careless[2] pleading. The plaintiff spe-

1. The defendants point out that the sheriff's sale notice contained a phrase "and all other personal property found on the premises." The notice also indicates that the execution

sale was to be on the property of Ethel Hazo and the Moses Hazo Company.
2. We point out, for example that Exhibit B attached to the complaint consists of two pages

cifically states as a cause of action: "Moreover, the defendants above-named [Geltz, Burkardt and Telford] conspired to deprive Hazo of her constitutional right to due process of the law and equal treatment under the laws in violation of Title 42, United States Code, § 1985." As the District Court pointed out, the appellant's counsel was apparently then unaware of the Supreme Court's ruling in *Griffin v. Breckenridge,* 403 U.S. 88, 98, 91 S.Ct. 1790, 29 L.Ed.2d 338 (1971), for no "massive and effective" class-based private conspiracy is alleged. The remedy originally sought under section 1985(3) has been abandoned in this Court. Despite all the deficiencies in pleading, the substance of the complaint appears to be that Deputy Sheriff Telford joined in a conspiracy with the other named defendants to deprive Mrs. Hazo of her property in contravention of the Fourteenth Amendment by abusing a state-court procedure and writ of execution. All of the defendants moved to dismiss the complaint: Burkardt on the ground that he was acting in a purely private capacity as an attorney and not under color of state law; Geltz on the ground that no cause of action had been stated against her; and Telford on the ground that he was at the time of the sale cloaked with a judicial immunity. The District Court granted the motions and dismissed the complaint finding that Telford in executing the levy was immune from suit; and there being no other state actor liable, there could be no one for Burkardt and/or Geltz to conspire with. *Curtis v. Everett,* 489 F.2d 516 (3d Cir.1973), *cert.*

denied, 416 U.S. 995, 94 S.Ct. 2409, 40 L.Ed.2d 774 (1974); *Melo-Sonics Corporation v. Cropp,* 342 F.2d 856, 858–59 (3d Cir.1965). The complaint also seeks damages and injunctive relief.

■■■ Succinctly, do the factual averments and the state of immunity law justify this dismissal? We think not. A sheriff or his deputies are not necessarily immune from civil suit under section 1983. See, e. g., *Hesselgesser v. Reilly,* 440 F.2d 901 (9th Cir.1971) (under state law). However, some Circuits have held that a sheriff or his deputies are not liable under section 1983 unless they misuse their power or act in bad faith. *Tucker v. Maher,* 497 F.2d 1309, 1313 (2d Cir.1974), *cert. denied,* 419 U.S. 997, 95 S.Ct. 312, 42 L.Ed.2d 271 (1974); *Nelson v. Hall,* 368 F.2d 103, 107 (9th Cir.1966). Here, the case must be deemed to turn upon the liability of Deputy Sheriff Telford. Before this Court, Hazo contends that Burkardt is liable only insofar as he conspired with state official Telford, not in his capacity as attorney-officer of the court.[3] Given the posture of the case, we treat Burkardt as a private person. If suit cannot be maintained against Telford under section 1983, then the conspiracy allegations with regard to Burkardt and Geltz must also fail.

The District Court has relied in large part upon *Lockhart v. Hoenstine,* 411 F.2d 455 (3d Cir.1969), *cert. denied,* 396 U.S. 941, 90 S.Ct. 378, 24 L.Ed.2d 244 (1969), and *Gigliotti v. Redevelopment Auth. of the City of New Castle,* 362 F.Supp. 764 (W.D.Pa. 1973), *aff'd.,* 492 F.2d 1238 (3d Cir.1974).[4]

reproduced so as to be almost illegible, and it was necessary to cause our Clerk to communicate with counsel for the appellant in order to supply this startling deficiency. We also point out that pages 37–39, 41–44, 46–51, of the Appendix here are blank. Counsel for the appellant either did not check the contents of his complaint or his Appendix, or was indifferent to these omissions.

3. We do not read the District Court's opinion as holding that Burkardt as an officer of the court is "cloaked" with a veil of immunity in this case. Although the District Court used the term "immunity", that term was used in the context of "state action". The District Court had held that Burkardt was not acting under

color of state law and was thus "immune" from liability in this case. We therefore do not reach the issue of the immunity *qua* immunity of Burkardt acting in his capacity as an attorney-at-law.

4. As we have indicated a conspiracy based on section 1985 was alleged and this cause of action was properly abandoned on appeal. It is also obvious that Hazo has set out allegations which could sustain a conspiracy based on section 1983. Paragraph 28 of the complaint is drawn in terms of a section 1983 violation, although it does not allege a conspiracy based on this section. Giving the benefit of the doubt to the plaintiff we treat the paragraph 28 allegation as though it did allege a

In *Lockhart* the Prothonotary was acting under a direct instruction from a Judge of the Pennsylvania Superior Court. In *Gigliotti* the Sheriff was apparently acting pursuant to 26 P.S. § 1–407(a) of the Pennsylvania eminent domain statute, executing a writ of possession issued by a Judge. In the case at bar there was a default judgment and an ordinary execution pursuant thereto by the Deputy Sheriff under Pa.R. Civ.P. 3102, 3128, 42 P.S.

More recent decisions of the Supreme Court such as *Wood v. Strickland,* 420 U.S. 308, 313–22, 95 S.Ct. 992, 1001, 43 L.Ed.2d 214 (1975), indicate that public school officials acting in good faith and without malice in their sphere of official responsibility are entitled to a "qualified good-faith immunity . . . from liability for damages" under section 1983. See also *O'Connor v. Donaldson,* 422 U.S. 563, 576–77, 95 S.Ct. 2486, 45 L.Ed.2d 396 (1975).[5] In *Imbler v. Pachtman,* 424 U.S. 409, 96 S.Ct. 984, 47 L.Ed.2d 128, 44 U.S.L.W. 4250 (1976), Mr. Justice Powell makes reference to the fact that each of the respondent's challenged activities was "an integral part of the judicial process." The respondent was a prosecuting attorney who was being sued for unlawful prosecution under section 1983 and was accorded absolute immunity. Mr. Justice Powell went on to say, however: "The purpose of the Court of Appeals' focus upon the functional nature of the activities rather than respondent's status was to distinguish and leave standing those cases, in its circuit and in some others, which hold that a prosecutor engaged in certain investigatory activities enjoys not the absolute immunity associated with the judicial process, but only a good-faith defense comparable to the policeman's. See *Pierson v. Ray,* 386 U.S. 547, 557 [87 S.Ct. 1213, 18 L.Ed.2d 288] (1967). We agree with the Court of Appeals that respondent's activities were intimately associated with the judicial phase of the criminal process, and thus were functions to which the reasons for absolute immunity apply with full force. We have no occasion to consider whether like or similar reasons require immunity for those aspects of the prosecutor's responsibility that cast him in the role of an administrator or investigative officer rather than that of advocate." *Id.,* at 430, 96 S.Ct. at 995, 44 U.S.L.W. at 4256–57 (notes omitted). See also *Wisconsin v. Constantineau,* 400 U.S. 433, 91 S.Ct. 507, 27 L.Ed.2d 515 (1971), *distinguished, Paul v. Davis,* 424 U.S. 693, 96 S.Ct. 1155, 47 L.Ed.2d 405, 44 U.S.L.W. 4337 (1976); *Monroe v. Pape,* 365 U.S. 167, 182, 81 S.Ct. 473, 5 L.Ed.2d 492 (1961). This immunity distinction was an essential part of the holding in *Brawer v. Horowitz,* 535 F.2d 830 (3d Cir., Filed May 12, 1976).

It can be plausibly argued that an official acting under a direct order of the court is in a stronger position as an adjunct of the court than if he were merely effecting execution pursuant to Rules 3102, 3128, as in the case at bar. See *Waits, supra,* 516 F.2d at 206, stating that if a "defendant is directly involved in the judicial process, he may receive immunity in his own right for performance of a discretionary act or he may be covered by the immunity of the judge because he is performing a ministerial function at the direction of the judge." *Bauers v. Heisel,* 361 F.2d 581, 589 (3d Cir.1966) (*en banc*).

Of the two cases relied upon by the District Court, *Lockhart* involved an official, a Prothonotary under the direct supervision of the bench. In *Gigliotti* it is unclear how closely the Sheriff was directed by judicial mandate and procedure. The Supreme Court's new immunity language, *Brawer,* and *Waits* require a factual determination of how direct the judicial supervision before the absolute immunity can be accorded. Such a determination must be made in the case at bar. *Cf. United States v. Branch Coal Corporation,* 390 F.2d 7, 9–10 (3d Cir. 1968), *cert. denied,* 391 U.S. 966, 88 S.Ct. 2034, 20 L.Ed.2d 878 (1968), *citing, Yazoo &*

---

conspiracy under section 1983 and it may be by virtue of our remand that amendment to paragraph 28 may be deemed appropriate by the plaintiff.

**5.** The superintendent and other staff members of a Florida state hospital were the defendants.

*M.V.R. Co. v. City of Clarksdale,* 257 U.S. 10, 42 S.Ct. 27, 66 L.Ed. 104 (1921) (differing degree of judicial direction over execution versus judicial sale).

As the record now stands, we cannot assess whether Deputy Sheriff Telford's alleged conduct could sustain a cause of action. We do not know to what extent the procedures requiring or allowing the refusal of the check, the type of sale notice, and the service of process are directly supervised and sanctioned by the bench. It may be that these procedures have been developed as a matter of administrative convenience, not under direct judicial supervision. In short, this case *could* be a qualified immunity case.

 The distinguished District Judge has granted absolute immunity to the Deputy Sheriff despite his alleged illegal conduct. We think *Imbler, supra,* raises the possibility of only qualified "good faith" immunity. See and compare *Wood, supra.* In this light the conduct of the Deputy Sheriff consists of a series of acts, completely unproven, for there was no evidentiary hearing or basis for summary judgment. We observe that it is alleged that the Deputy Sheriff was acting as a member of a conspiracy. See note 4, *supra.* We note also that it is alleged that no service of process was made upon Hazo. A judgment against a person without service has been subject to collateral attack and held to be invalid. See *D'Arcy v. Ketchum,* 52 U.S. (11 Howard) 165, 13 L.Ed. 648 (1850). We reiterate what we observed as to *Wood, supra,* 420 U.S. at 576–77, 95 S.Ct. 992, that some public officials acting in good faith and without malice in their sphere of official responsibility, are entitled to "qualified good faith immunity." Certainly if the Deputy Sheriff is engaged in a conspiracy he is not acting in good faith.[6]

The Supreme Court, as we have indicated, has stated repeatedly that we should not act on constitutional issues except on a full record. See *Honeyman v. Hanan,* 300 U.S. 14, 25–26, 57 S.Ct. 350, 81 L.Ed. 476

(1937); *Villa v. Van Schaick,* 299 U.S. 152, 155–56, 57 S.Ct. 128, 81 L.Ed. 91 (1936) (per curiam); *Government of the Virgin Islands v. Testamark,* 528 F.2d 742 (3d Cir.1976); *Bauers v. Heisel, supra,* 361 F.2d at 594 (dissenting opinion). We must have an adequate record. We cannot properly decide this case upon the present inadequate record. The District Court should permit Hazo to amend her complaint upon reasonable terms. An evidentiary hearing should be had or summary judgment may be entered on an adequate record. Accordingly, we will vacate the judgment and direct the District Court to proceed in conformity with this opinion.

---

6. *Cf. Bryan v. Jones,* 530 F.2d 1210 (5th Cir. 1976) (*en banc*) (sheriff-jailer not entitled to

good-faith immunity defense where negligently maintains records).