**Sidney A. SPARKS, R. L. Lynd, d/b/a Sidney A. Sparks, Trustee, Plaintiffs-Appellants,**

v.

**DUVAL COUNTY RANCH COMPANY, INC., et al., Defendants-Appellees.**

**No. 77–1249.**

United States Court of Appeals, Fifth Circuit.

Oct. 22, 1979.

Rehearing Denied Dec. 14, 1979.

Garland F. Smith, Weslaco, Tex., Patrick G. Rehmet, Alice, Tex., for plaintiffs-appellants.

Finley L. Edmonds, Corpus Christi, Tex., for Dennis.

Mark White, Atty. Gen. of Tex., Laura J. Martin, Austin, Tex., for Carrillo.

Clarence Martens, pro se.

Raul Garcia, Alice, Tex., for Manges and Duval County Ranch.

Before BROWN, Chief Judge, COLE-MAN, GOLDBERG, AINSWORTH, GOD-BOLD, CLARK, RONEY, GEE, TJOFLAT, HILL, FAY, RUBIN, VANCE, and KRA-VITCH, Circuit Judges.*

GEE, Circuit Judge:

We consider this case en banc to review the holding of our panel that private citizens, in conspiring with a state judge, did not conspire with any person against whom a claim valid under 42 U.S.C. § 1983 could be stated and thus themselves were entitled to dismissal of claims made against them under that statute. The panel, like the district court, acted under constraint of our prior opinions, opinions that it could not properly overrule. We can and do.

■ The material allegations in this case are set out in the panel opinion, 588 F.2d 124, 5 Cir., and we restate only those necessary to an understanding of our present holding.[1] It is asserted that state judge O. P. Carrillo conspired with the four private defendants to deprive the plaintiffs of their oil production. This the judge did by entering an injunction, within his judicial powers to grant, prohibiting plaintiffs from producing certain oil. It is claimed that one of the defendants, Manges, bribed him to do this, while the other two, in knowing furtherance of the conspiracy, acted as sureties for the injunction bond. Carrillo was, of course, unqualifiedly immune from suit for the damages occasioned by his judicial act, and as to him the suit was correctly dis-

missed. *Stump v. Sparkman,* 435 U.S. 349, 98 S.Ct. 1099, 55 L.Ed.2d 331 (1978). Under the authority of a line of cases,[2] commencing in 1970 with *Guedry v. Ford,* 431 F.2d 660 (5th Cir. 1970), the private defendants obtained dismissal of the complaint's claims against them as well. It is these cases, insofar as they extend a derivative immunity to private persons who conspire with judges, that we overrule today.

We are met at the outset by several technical arguments questioning the propriety of our addressing, and perhaps our power to address, the issue of derivative immunity that we decide today. It is said that the matter was not raised below and, if so, was not properly pleaded; was not raised in briefs to our panel; and was not taken en banc by us within the applicable time limits.

■ As for the district court pleadings, we have examined them and find the matter sufficiently raised and properly pleaded. Whatever immunity the private defendants derived from Judge Carrillo was a matter of defense for them to plead. It was not necessary that plaintiffs negative this or any other defense in their pleadings. The first amended complaint asserts the existence of a conspiracy in considerable detail; and while we agree that mere conclusory allegations of conspiracy cannot, absent reference to material facts, survive a motion to dismiss, *Slotnick v. Staviskey,* 560 F.2d 31 (1st Cir. 1977), we think the plaintiffs' pleadings sufficiently stated the facts on which they relied.[3]

---

* Judges Johnson, Garza, Henderson, Reavley, Politz, Hatchett, Anderson and Randall did not participate in the consideration of or decision in this case. The case was taken under submission by the court en banc on June 5, 1979.

1. The allegations set out in the panel opinion and partially restated here are merely the unproven assertions of the complaint that must be taken as true in the posture of this case, the complaint having been dismissed for failure to state a claim upon which relief could be granted even if the allegations proved true.

2. *Slavin v. Curry,* 574 F.2d 1256 (5th Cir.), *modified on other grounds,* 583 F.2d 779 (1978); *Perez v. Borchers,* 567 F.2d 285 (5th Cir.), cert. denied, 439 U.S. 831, 99 S.Ct. 109, 58 L.Ed.2d 126 (1978); *Humble v. Foreman,* 563 F.2d 780

(5th Cir. 1977); *Hill v. McClellan,* 490 F.2d 859 (5th Cir. 1974); *Guedry v. Ford,* 431 F.2d 660 (5th Cir. 1970).

3. Appellee Dennis, for example, complains that the pleadings as to him were insufficient. They were:

MANGES, knowing that such a bond would be required, had previously arranged for Defendants MARTENS and DENNIS to participate in this conspiracy by signing as sureties on the injunction bond required by law. MARTENS and DENNIS, being aware of the unlawful purpose of the conspiracy and of the roles played by MANGES and CARRILLO therein, did in fact sign such injunction bonds as sureties thereto, which actions in concert with MANGES, CARRILLO, and

We have also examined the briefs to the panel. Appellants show the private party defendants as appellees and certify them as persons interested in the appeal's outcome. The briefs of the two appellees who filed, which were adopted by the other appellees, similarly certify the private party defendants as appellees. There is no question that all knew they were before the court. The issue as stated by appellants was certainly broad enough to cover immunity or want of it in the private parties.[4] And while we agree with appellees that the overwhelming emphasis in the arguments to the panel was on the immunity *vel non* of Judge Carrillo, the brief of Mr. Dennis, the private appellee whose brief was adopted by all others, does assert, albeit perfunctorily, their own immunity deriving from that of Carrillo. Finally, when we took the case en banc on rehearing of the panel's opinion and judgment, there can be no doubt that the appeal remained pending before the court, and we directed all parties' attention to this aspect of the broad issue before us.[5]

Finally, it is asserted that the court somehow lost jurisdiction to hear the cause en banc when no motions for rehearing were filed to the panel and the 21-day period specified for issuance of the mandate by Rule 41, Federal Rules of Appellate Procedure, passed. Even cast in its worst light, that the court lay under a duty imposed by the "shall" language of Rule 41 to issue mandate within that time span, we do not think a failure to perform that duty punctually would deprive the court of jurisdiction. The rule grants us power to shorten or enlarge the specified period by order. This we did by instructions to the clerk to withhold issuance of the mandate. There is no requirement in the rule that such an order be formal, written, or that the parties be given notice of it, though this might be desirable. And even had there been no order, our jurisdiction would not have been affected, though it may be that in a proper case we might have been subject to a peremptory writ. Finally, our power to recall and reform a mandate even after issuance is, though not specifically provided for in the rules, well established, and no motion is required for us to hear or rehear a cause en banc. Rule 35(a), Fed.R.App.P.

Since we find that the issue of the derivative immunity of private persons who conspire with a judge is properly before us, we turn now to the substance of that matter. We begin our inquiry with a recognition that the absolute immunity that judges enjoy exists for the benefit of the judicial system and of the public, not for that of the judge. Only a hero could exercise an unfet-

---

DCRC, did aid such conspiracy and damage Plaintiffs as hereinafter alleged.

Thus it was alleged that Martens and Dennis participated in the conspiracy, knowing its unlawful purpose as well as the roles of Manges and Carrillo, by performing a specific act to forward the conspiracy. Certainly, in the absence of any motion for more definite statement, this was adequate.

4. Appellants' brief reads:

Does the doctrine of judicial immunity render a Complaint subject to dismissal for failure to state a claim upon which relief can be granted when the Complaint alleges a violation of civil rights under 42 U.S.C. § 1983 by a state judge and others acting in concert with him and contains specific, factual allegations of an extra-judicial agreement between the judge and his co-conspirators that the judge would abuse his judicial office for the pecuniary benefit of his co-conspirators and further contains specific allegations of the subsequent abuse of judicial office in furtherance of the conspiracy.

5. The letter of our clerk, Mr. Wadsworth, sent by our direction to counsel for all parties, reads in pertinent part:

The issue with which the Court en banc is concerned is that reflected in the holding that:

Since Carrillo is immune, the remaining defendants, who are all private citizens, did not conspire with any person against whom a valid § 1983 claim can be stated. Thus, the district court also properly dismissed the § 1983 claims against the other defendants. 588 F.2d at 126 [headnote 2]. In other words, the Court wishes to reconsider the holding that Judge Carrillo's alleged co-conspirators—the private citizens—effectively share his immunity, since "they did not conspire with a person against whom a valid § 1983 claim can be stated." *See Stump v. Sparkman*, 1978, 435 U.S. 349, 364 n.13, 98 S.Ct. 1099, 55 L.Ed.2d 331.

tered judgment while facing, day after day and case after case, the prospect of personal ruin implicit in permitting every losing party to sue him for damages. There have never been enough heroes to go around, and a sound policy must deal with the prospect that some who occupy the bench may not be of that ilk.

■ In this imperfect world, however, where even the moon has a dark side, this manifestly necessary policy has the unfortunate effect of insulating not only the robe, but the person within it, from being called to account for actions that may be illegal, even corrupt, as is alleged here. This undesirable side effect of an otherwise valuable prescription can, as to the magistrate himself, be safely mitigated only slightly. All authorities[6] recognize that when a judge acts in a "clear absence of all jurisdiction" he is not protected. But any broader or less explicit inroad upon the robe's immunity in an attempt to reach its wearer would invite recurring attempts at enlargement, ruinous in terms of judicial time and funds expended to defend—even successfully—against them. Thus the rule of judicial immunity from damages, with its single, bright-line exception, is as broad as, but no broader than, is necessary.

■ Even so, the rule is a harsh one, laden with potential for unredressed wrong. As such, its scope should not be extended beyond that necessary to preserve the judge's independence of mind and judgment, for it is upon the manifest necessity to protect these, and on that alone, that the rule rests. When this is clearly seen, it becomes equally clear that no sound policy supports conferring any such immunity on private persons who persuade a judge to exercise his jurisdiction corruptly. Indeed, the thrust of wisdom is to the contrary. Sound policy suggests that attempts by such persons to subvert the judiciary should be penalized in every just way, civil as well as criminal. It suggests that the fullest redress that the judicial system can accommodate while functioning effectively should be granted for such odious wrongs. And it suggests that the actual incentive to corruption held out by the present doctrine, with its promise of civil immunity to those who succeed in involving a judge's powers in their nefarious schemes, should be removed.

■ To be sure, the extension of derivative immunity to private persons alleged to have conspired with a judge eliminates one problem. Every trial (or appeal) in state courts, civil or criminal, carries the potential for a conspiracy claim, one that the judge (or judges) and whatever other participants the pleader's fancy may light upon acted in knowing concert to deny federal rights protected by section 1983. Mischievous damage suits of this sort license the ill-disposed to require judges to appear and testify. But the benefit that derivative immunity would accord in protecting judges from an obligation to testify in the trial of their alleged coconspirators, while not wholly illusory, is comparatively insignificant. There already exist many situations in which a judge is amenable to legal process, and these have not proved ruinous to the functioning of the judicial system. For example, we have never held that judges are immune from claims for equitable relief, and both we and the Supreme Court have intimated the contrary. *See Wood v. Strickland*, 420 U.S. 308, 315 n.6, 95 S.Ct. 992, 997 n.6, 43 L.Ed.2d 214 (1975) ("immunity from damages does not ordinarily bar equitable relief as well"); *United Steelworkers of America, AFL–CIO v. Bishop*, 598 F.2d 408, 413 (5th Cir. 1979) (leaving open possibility judge "may be the object of equitable relief in proper cases"); *United States v. McLeod*, 385 F.2d 734, 738 n.3 (5th Cir. 1967) (observing that *Pierson v. Ray*,

---

**6.** These range from *Bradley v. Fisher*, 13 Wall. 335, 351–52, 20 L.Ed. 646, 651 (1872), to *Stump v. Sparkman*, 435 U.S. 349, 98 S.Ct. 1099, 55 L.Ed.2d 331 (1978). An even earlier formulation of the doctrine in *Randall v. Brigham*, 7 Wall. 523, 536, 19 L.Ed. 285, 291 (1869), that judges "are not liable to civil action for their judicial acts, even when such acts are in excess of their jurisdiction, unless . . . the acts, in excess of jurisdiction, are done maliciously or corruptly," was pruned of qualifying language by *Bradley*.

386 U.S. 547, 87 S.Ct. 1213, 18 L.Ed.2d 288 (1967), while holding "that judges are immune from liability for *damages* in suits under 42 U.S.C. § 1983 . . . does not . . . mean that they may not be enjoined from pursuing a course of unlawful conduct"). Nor, of course, does immunity exist for judges under the criminal law or from normal civil process where a judge happens to be a witness to an incident giving rise to a lawsuit. And habeas proceedings sometimes require the judge's testimony. We therefore doubt that the cause of keeping state judges off our witness stands and in their courtrooms with respect to conspiracy trials is critical to the effective functioning of the judicial system. Moreover, any good conferred by the incremental degree to which the derivative immunity rule might protect state court judges from interruption of their courtroom duties by an obligation to testify seems greatly outweighed by the advantages gained by punishing those who subvert the judiciary, as discussed by us above.

So much, then, for policy, a matter entirely proper for our thorough exploration in view of the judge-made character of the doctrines under examination. We turn next to logical considerations, it being pressed upon us that a derivative immunity for judges' coconspirators follows ineluctably from established concepts, concepts both of state action and of general conspiracy law. As an analytical tool, let us posit the hardest hypothetical case, that of only two conspirators, one a private party and the other a state judge whose judicial order injuring federally protected rights constitutes the sole state action and the only overt act taken or needed to consummate the scheme. Both the conspiracy, since it takes two to conspire, and the section 1983 case, since it requires state action, therefore turn on the judge's involvement. How, as a matter of reason, can either be found to exist, it is asked, when the judge is immune from suit for the damages wrought?

The objection founded in conspiracy law, we conclude, is sustained by neither reason nor authority. Long ago, in a case involving one alleged to have conspired with foreign diplomats immune even to criminal indictment, we reasoned and held:

The bill of Particulars furnished by the District Attorney admits that the Japanese persons named in the indictment were "the representatives, officers and agents of the Imperial Japanese Government." The motion to quash, which was overruled on demurrer, states that one was a Commander in the Japanese navy, and the other registered in our Department of State as Assistant Naval Attache of the Japanese Government. We may assume it proven that they were such. It is thereupon argued that they have diplomatic immunity from prosecution, and could not be co-conspirators with Farnsworth so as to constitute a criminal conspiracy . . . . If such persons in the United States join with a citizen of the United States in a conspiracy to commit a crime, though it be conceded that the foreign diplomat would not be indicted in the District Court, or even that he could not be, his immunity will not excuse the local citizen. At least two persons must join in an unlawful enterprise to constitute it a conspiracy. The statute expressly so says. But both need not be prosecuted, or prosecutable. One may die, may escape, or obtain a pardon; but the other remains guilty. It may be that the offense of giving national defense information to a foreign government denounced by Section 32 could not well be committed by representatives of that government who receive it; but even so a person who cannot commit a substantive offense may guiltily conspire with another who can commit it that he do so. *United States v. Rabinowich*, 238 U.S. 78, 35 S.Ct. 682, 59 L.Ed. 1211; *United States v. Holte*, 236 U.S. 140, 35 S.Ct. 271, 59 L.Ed. 504, L.R.A. 1915D, 281; *O'Leary v. United States*, 7 Cir., 56 F.2d 515; *Curtis v. United States*, 10 Cir., 67 F.2d 943. The rule that the acquittal of all save one alleged conspirators results in the acquittal of all applies to acquittals on the merits. The reason of it is that such judgments prove that there was in fact

no criminal agreement among two or more persons. On the trial of a conspirator there is no technical rule that others must be concurrently or precedently convicted. Nor will personal defenses of the other conspirators not amounting to a total incapacity to commit crime be a defense to him.

*Farnsworth v. Zerbst,* 98 F.2d 541, 544 (5th Cir. 1938). Unable to improve upon this reasoning or upon the language expressing it, we reaffirm it. Logically, Judge Carrillo's immunity from the damages remedy did not in any manner effect his capacity to conspire, as might have, say, an established condition of insanity. On what is presently before us, he was as able to enter into an agreement, legal or illegal, as any other adult citizen. The same is true of our hypothetical judge whom, since he is our creature, we endow with normal capacities. The objection sought to be grounded in conspiracy law does not bear analysis.

Nor do logic or authority support the objection that, since the sole "state actor" is immune from a damage suit, state action is somehow absent. Indeed, the proposition is so wide of the mark that merely to state it is to reveal its want of logic. In assaying for state action, the question is not at all whether the agent of the state who acts is subject to any particular sanction. Rather, it is whether he has exercised the power of the state in the premises. Both Judge Carrillo and our hypothetical magistrate entered orders deriving their force from state sovereignty. These were state actions, and their character as such is not impeached in any way by the circumstance that their authors could not be mulcted in damages because of them.

■ The independence of the issue of state action from the pursuit of specific remedies against state officials is illustrated by *Adickes v. S. H. Kress & Co.*, 398 U.S. 144, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970). In that case, the plaintiff, Sandra Adickes, brought suit against *S. H. Kress & Co.* to recover damages under 42 U.S.C. § 1983 for an alleged violation of her constitutional rights under the equal protection clause of the fourteenth amendment. One count of Ms. Adickes' complaint alleged that while serving as a volunteer teacher at a Freedom School for black children in Hattiesburg, Mississippi, she went with six of her students to the Kress store to eat lunch. According to the complaint, after the group sat down at a booth a policeman entered the store and " 'observed [Ms. Adickes] in the company of the Negro students.' " 398 U.S. at 149, 90 S.Ct. at 1604. A waitress then took the orders of the Negro students but refused to serve Adickes because she was a white person "in the company of Negroes." *Id.* Following this refusal of service, Adickes and her students allegedly left the Kress store, and when they reached the sidewalk, the policeman who had previously observed her inside the lunchroom arrested Adickes on what she asserted was a groundless charge of vagrancy. 398 U.S. at 149, 90 S.Ct. 1598. Adickes brought suit only against Kress, a private party, and not against the state or its officials, charging in this count that a Kress employee and a Hattiesburg policeman "reached an understanding to deny [her] service in the Kress store, or to cause her subsequent arrest because she was a white person in the company of Negroes." 398 U.S. at 152, 90 S.Ct. at 1605. The Court was plainly untroubled by the fact that "[t]he involvement of a state official in such a conspiracy plainly provid[ed] the state action essential . . ." *Id.* But in addition, the Court, discussing the elements of a section 1983 conspiracy between public officials and private persons, made clear that a party who was not an official of the state could be liable for damages under section 1983 by virtue of the fact that the private person *himself* acts under color of state law and fulfills the state action requirement of section 1983 actions so long as he is involved in a conspiracy with a state official. The Court declared that

a private party involved in such a conspiracy, even though not an official of the State, can be liable under § 1983. "Private persons, jointly engaged with state officials in the prohibited action, are acting 'under color' of law for purposes of

the statute. To act 'under color' of law does not require that the accused be an officer of the State. It is enough that he is a willful participant in joint activity with the State or its agents . . . ." 398 U.S. at 152, 90 S.Ct. at 1605–1606, *quoting United States v. Price*, 383 U.S. 787, 794, 86 S.Ct. 1152, 16 L.Ed.2d 267 (1966) (citation omitted). By the same reasoning, coconspirators act under color of law and can be sued for damages in a section 1983 action when they involve a judge in their plot, regardless of whether the judge can be brought to justice for his part in the scheme. It follows that the unavailability of damages as a remedy against either Judge Carrillo or our hypothetical judge has no effect on whether the judges' actions were those of the state such that their coconspirators, too, acted under color of state law when they involved the judge in their conspiracy. The state action requirement for a section 1983 suit is met, judicial immunity notwithstanding.

The doctrine of a derivative immunity for private persons who conspire with judges can thus be seen to lack foundation in either reason or authority. Accordingly, we abolish it and, to the extent that our cases cited at note 2 above espoused it, we overrule them. We recognize that in doing so we cast away a tool for discouraging possible mischievous lawsuits that, by intention or effect, harass judges for performing their offices. But this tool, like a hot flatiron, is too awkward for service as a cautery and works too much damage to surrounding structures for the small benefit it confers.

Insofar as the judgment below dismissed the claims against Duval County Ranch Co., Inc. and Messrs. Manges, Dennis and Mar-

tens, it is reversed, and these claims are remanded for further proceedings. Insofar as it dismisses the claims for damages against Judge O. P. Carrillo, it must be affirmed.

AFFIRMED in part and in part REVERSED.

COLEMAN and AINSWORTH, Circuit Judges, with whom RONEY and HILL, Circuit Judges, join dissenting:

Judges Wisdom, Godbold, and Tjoflat decided this case correctly at the panel level, 588 F.2d 124, 5 Cir. That decision should not now be overturned by the en banc court.[1]

The majority concedes, as it must, that judges are *absolutely* immune to civil damage suits for judicial acts done within their jurisdiction, *Bradley v. Fisher*, 1872, 80 U.S. (13 Wall.) 335, 20 L.Ed. 646. The same absolute immunity applies to state prosecutors, *Imbler v. Pachtman*, 1976, 424 U.S. 409, 96 S.Ct. 984, 47 L.Ed.2d 128.[2]

*Bradley v. Fisher, supra*, was a case, in overheated times, growing out of the unsuccessful prosecution of John H. Suratt for complicity in the murder of President Lincoln. We feel that the en banc majority has failed to give full recognition to the teachings of that case. It was there held:

"[The Judge] cannot be subjected to responsibility for it in a civil action, however erroneous the act may have been, and however injurious in its consequences it may have proved to the plaintiff. For it is a general principle of the highest importance to the proper administration of justice that a judicial officer, in exer-

---

1. Nothing is to be gained by commenting at any great length on the highly strained manner by which our Court has taken this case under its *en banc* wing. The extended apologia at the outset of the majority opinion is comment enough. Suffice it to say, nobody appeared here for any state judge. The sword is now suspended over their heads in a case in which only some, but not all, *private* parties appeared by counsel. If a criminal defendant were to be given this kind of short shrift we undoubtedly would be shrieking that it was "fundamentally

unfair"—devoid of the most elementary "due process".

This case ought to be remanded to the docket. Briefs and oral argument ought to be had on behalf of state judges and state prosecutors. *They are the real defendants in this case.*

2. *See, also,* the extensive array of cases cited in the panel opinion, 588 F.2d at 126, footnote 2.

Since *Imbler* held that state prosecutors have the same absolute immunity as judges, the en banc majority necessarily includes them in the net now being devised for judges.

cising the authority vested in him, shall be free to act upon his own convictions, *without apprehension of personal consequences to himself* (emphasis added). Liability to answer to every one who might feel himself aggrieved by the action of the judge, would be inconsistent with the possession of this freedom, and would destroy that independence without which no judiciary can be either respectable or useful."

80 U.S. at 347.

The High Court not only said that the judges are immune to suits for pecuniary damages. The Court said that a judge shall be free to act "without apprehension of personal consequences". Being dragged through a civil suit among private individuals in which the judge's integrity is the indispensable jurisdictional issue cannot be anything but a personal consequence which the *en banc* majority now allows in contravention to *Bradley*.

*Bradley* went on to hold that the purity of judicial motives, even judicial corruption, cannot be the subject of judicial inquiry in a civil suit. It noted that:

"If civil actions could be maintained in such cases against the judge, because the losing party should see fit to allege in his complaint that the acts of the judge were done with partiality, or maliciously, or corruptly, the protection essential to judicial independence would be entirely swept away. Few persons sufficiently irritated to institute an action against a judge for his judicial acts would hesitate to ascribe any character to the acts which would be essential to the maintenance of the action."

80 U.S. at 348.

*Bradley* was recently reaffirmed in *Stump v. Sparkman*, 435 U.S. 349, 98 S.Ct. 1099, 55 L.Ed.2d 331 (1978). It was argued in *Stump* that the judge should be denied immunity "because of the tragic consequences of [his] actions", 98 S.Ct. at 1108, but the Supreme Court reaffirmed that a judicial officer should be free of " 'appre-

hension of personal consequences to himself' " [citing *Bradley*], 98 S.Ct. at 1108.

We believe that judges may not be attacked collaterally in a damage suit among private parties where, as in a § 1983 case, jurisdiction depends on the establishment by a preponderance of the evidence that the judge acting within his jurisdiction nevertheless acted conspiratorily and corruptly.

There is no merit in the argument that in the case presently before us the judge is not a party defendant. The functions of his office and his performance therein are indispensably necessary to the continuation of the action. To say that he is not being sued is a pretense.

What the en banc Court is doing here is to abrogate state judicial or prosecutorial immunity if the plaintiffs allege a conspiracy under a § 1983 cause of action.

Although they cannot be sued directly, this en banc opinion allows state judges and state prosecutors to be sued *indirectly*, seriously breaching absolute judicial immunity. We must dissent.

The destruction of many a massive dike began with a very small leak. Jurisprudentially, this is just such a case, and the newly announced doctrine has been reached without precedent to support it; indeed, the majority summarily overrules prior precedents—"*We can and we do*" (emphasis added). By this indirection the Court now plants a land mine under every state judge and prosecutor in this Circuit, to be detonated at the whim and caprice of any unhappy state court litigant. And it makes no difference, apparently, that such litigants in meritorious cases have available state remedies against the private defendants.

The majority asserts at p. 980, that this unprecedented step is mandated by the need to deal with "unredressed wrong", but that protestation cannot stand examination. There is not the slightest hint that *damage suit* redress was unavailable under Texas law against the private defendants.[3]

---

**3.** The panel opinion pointed out, 588 F.2d at 125, that the Texas Court of Civil Appeals dissolved the allegedly corrupt injunction involved in this case; moreover, the judge who issued it

The majority concedes at p. 980, that "[e]very trial (or appeal) in state courts, civil or criminal, carries the potential for a conspiracy claim, one that the judge . . . acted in knowing concert to deny federal rights protected by § 1983".

That is exactly the fatal defect in this majority decision, and it should have been recognized that state prosecutors are also being shoved off the ledge.

In seeking, quite lamely we think, to minimize the impact of what is being done here, the majority opines that the obligation of a judge to testify in such cases "is comparatively insignificant", as if this were the only danger to which judges and prosecutors are now about to be subjected. But this is a very small portion of the iceberg.

If there is anything a judge ought to prize and that the public demands, it is his *judicial integrity.* It is commonly accepted that a judge must not only avoid evil but he must avoid even the appearance of it. Under this decision any state judge or any state prosecutor may have that integrity besmeared by any individual who has lost a case and who knows how to *charge* enough misconduct to withstand a motion to dismiss, however without merit the complaint may be.

The Supreme Court has consistently recognized the existence of an interest in reputation which cannot be infringed without the invocation of due process requirements. The Court articulated this principle most clearly in *Wisconsin v. Constantineau,* 400 U.S. 433, 91 S.Ct. 507, 27 L.Ed.2d 515 (1971), by asserting that "[w]here a person's good name, reputation, honor, or integrity is at stake because of what the government is doing to him, notice and an opportunity to be heard are essential". *Id.* at 437, 91 S.Ct. at 510. The High Court reaffirmed this

concept in *Goss v. Lopez,* 419 U.S. 565, 95 S.Ct. 729, 42 L.Ed.2d 725 (1975), requiring a hearing for students suspended from high school. The Court noted that the charges of misconduct upon which the suspensions were based "could seriously damage the students' standing with their fellow pupils and their teachers as well as interfere with later opportunities for higher education and employment". *Id.* at 575, 95 S.Ct. at 736. *See, also, Board of Regents v. Roth,* 408 U.S. 564, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972). The Court in rejecting the claim for a due process hearing noted that this would be a "different case" if the State had made charges against the plaintiff which "might seriously damage his standing and associations in his community".

In *Codd v. Velger,* 429 U.S. 624, 97 S.Ct. 882, 51 L.Ed.2d 92 (1977), the Court recognized that an allegation that the plaintiff, a trainee policeman, had attempted to commit suicide, if false, would place such a stigma upon the plaintiff's reputation that due process procedures would be required under the Fourteenth Amendment.

In suits such as that now allowed by the majority for the first time in the history of this Court, how can the judge or the prosecutor defend himself? He is not a party defendant, so he is not entitled to trial participation as a party litigant. He might arrange active participation by surrendering the cornerstone of his judicial independence in a motion to intervene as a defendant. If he goes to that extreme (which if consistently followed would greatly harm the judiciary as an institution) he most likely would have to employ counsel, presumably at his own expense, suffering the consequent pecuniary punishment, if nothing else.

If the judge or the prosecutor does not become a party defendant, how can he

has been removed from the bench. We would be surprised to learn that the jurisprudence of Texas is so deficient that the damages available under 42 U.S.C. § 1983 are unavailable under Texas law against the private individuals guilty of the kind of conspiracy alleged here.

It has been said, however, that rights guaranteed by Texas law are "no good in Duval County". Conditions in *one county* in six states cannot possibly justify abrogation of the absolute immunity of hundreds of judges and prosecutors who have absolutely nothing to do with what goes on in Duval. Verily, the hair on the tail is now to be allowed to wag the dog.

guarantee himself the right to testify in behalf of his vindication? Who will call him as a witness? Who will examine and cross-examine witnesses? Could he ask for jury instructions? Would he be allowed to make an argument to the jury? Must the judge stand helpless while the most vital need and the most precious possession of the judiciary is damaged, possibly destroyed, by *private parties* to a *private* damage suit *which could not have been brought directly against him*?

Does our jurisprudence contemplate that in those cases where a judge has absolute immunity to a suit for money damages he may nevertheless have his judicial character and reputation irreparably splotched by a verdict from six jurors in a suit to which he could not have been made a party? We do not think so.

Although the majority *attempts* it, are judges to be equated with agents of foreign powers? Are judges to be equated with policemen who have only qualified immunity?

Neither do we consider the necessity for a state judge or prosecutor to appear as a witness in a private suit for money damages to be as inconsequential as the majority appraises it. Cases have a way of being delayed for a long time, continued from time to time. The state judge or prosecutor may have an important case which demands speedy attention. At the beck and call of private litigants he is immobilized, or, at least, forced into delays which may hamper justice.

**4.** *Slotnick v. Staviskey*, 1 Cir., 1977, 560 F.2d 31, *cert. denied*, 434 U.S. 1077, 98 S.Ct. 1268, 55 L.Ed.2d 783 (1978); *Kermit Const. Corp. v. Banco Credito Y Ahorro Ponceno*, 1 Cir., 1976, 547 F.2d 1.

**5.** See, e. g., *Hazo v. Geltz*, 3 Cir., 1976, 537 F.2d 747; *Guedry v. Ford*, 5 Cir., 1970, 431 F.2d 660; *Kurz v. Michigan*, 6 Cir., 1977, 548 F.2d 172; *Hansen v. Ahlgrimm*, 7 Cir., 1975, 520 F.2d 768; *Haldane v. Chagnon*, 9 Cir., 1965, 345 F.2d 601.

The position of the Seventh Circuit is presently somewhat unclear, following the highly fractionated en banc opinion in *Sparkman v.*

## THIS OPINION VIOLATES FEDERAL PRINCIPLES

Although the considerations already stated should be enough to affirm the dismissal of this complaint, there is a far more serious reason for not invading the absolute judicial immunity of state judges and state prosecutors.

Regardless of how diligently we may try to avoid the issue, the cold fact is that this decision makes state judges and state prosecutors *personally* answerable in federal court to private litigants for their state judicial or prosecutorial acts.

Of course, the legal correctness of such judicial actions may be reviewed as to federal constitutional questions in a number of ways, but the point is that in those instances the *legal merits* of the action are being reviewed, a matter of no *personal* consequence to the judge or prosecutor as to how the case may ultimately turn out.

## MAJORITY RATIONALE CONFLICTS WITH THE DECISIONS OF OTHER CIRCUITS

Not only is the en banc opinion of this court harmful to basic policies underlying judicial immunity and insensitive to the delicate balance between state and federal courts, it is also contrary to what has been the clear weight of authority in the Federal Courts of Appeals. With the exception of the First Circuit,[4] all Circuit Courts that have explicitly considered the question have concluded that a private defendant cannot be held liable under § 1983 for conspiring with a state actor if the state actor himself is immune.[5]

*McFarlin*, 7 Cir., 1979, 601 F.2d 261. The per curiam opinion in that case affirmed the district court's dismissal of a § 1983 conspiracy against private defendants after the state actor (a judge) was held to be immune from suit. Four concurring opinions were filed along with the per curiam order. Two judges wrote that the question of whether a § 1983 suit may be brought when the state actor is immune was not properly before the court. *Id.* (Pell, J., and Bauer, J., concurring). Three judges, on slightly divergent rationales, would allow § 1983 suits even when the state actor is immune, provided the plaintiff meets the burden of a

The cases enunciating this rule begin with the Ninth Circuit's oft-quoted decision in *Haldane v. Chagnon*, 9 Cir., 1965, 345 F.2d 601. In *Haldane*, plaintiff charged that two judges of the Superior Court of California, the bailiff of one of the judges, and two licensed attorneys were involved in a broad-based conspiracy to deny him various constitutional rights. The Ninth Circuit affirmed the lower court's order of dismissal against the judges and the bailiff on the ground of judicial immunity. It then affirmed the dismissal as to the attorneys with the following language:

> With the elimination of the defendant judges and bailiff from the case, claims against the defendant attorneys under the Civil Rights Act cannot be stated. The attorneys were not State officers, and they did not act *in conspiracy with a State officer against whom appellant could state a valid claim.* It follows that they did not, and could not, commit the alleged wrongful acts "under color of state law or authority"; hence, they are not subject to liability under the "Civil Rights Act." *Id.* at 604.05. (Emphasis added).

The Ninth Circuit has adhered to this rule in the recent cases of *Sykes v. Department of Motor Vehicles*, 9 Cir., 1974, 497 F.2d 197; and *Briley v. California*, 9 Cir., 1977, 564 F.2d 849.[6]

In addition to the Ninth Circuit, the same rule has been adopted by the Third,[7] Sixth, and Seventh Circuits.[8] *See, e. g., Hazo v. Geltz*, 3 Cir., 1976, 537 F.2d 747; *Waits v. McGowan*, 3 Cir., 1975, 516 F.2d 203; *Kurz v. Michigan*, 6 Cir., 1977, 548 F.2d 172; *Hansen v. Ahlgrimm*, 7 Cir., 1975, 520 F.2d 768; *French v. Corrigan*, 7 Cir., 1970, 432 F.2d 1211; *Brown v. Dunne*, 7 Cir., 1969, 409 F.2d 341. *See also Sparkman v. McFarlin*, 7 Cir., 601 F.2d 261, 1979.

In the Fifth Circuit, the above rule has been firmly established since the 1970 case of *Guedry v. Ford*, 5 Cir., 1970, 431 F.2d 660. After *Guedry*, the rule has been followed in *Slavin v. Curry*, 5 Cir., 1978, 574 F.2d 1256, modified on other grounds, 583 F.2d 779; *Perez v. Borchers*, 5 Cir., 1978, 567 F.2d 285; *Humble v. Foreman*, 5 Cir., 1977, 563 F.2d 780; and *Hill v. McClellan*, 5 Cir., 1974, 490 F.2d 859. A rule of law so firmly established should not be lightly overturned.

---

particularized pleading requirement. *Id.* (Fairchild, C. J., concurring), (Sprecher, J., concurring) (Tone, J., concurring).

Two cases from the Second and Third Circuits contain language broad enough to negate the rule stated in the text; i. e., that a private actor cannot be held liable for conspiracy under § 1983 if the state actor is immune. *Jennings v. Shuman*, 3 Cir., 1977, 567 F.2d 1213; *Fine v. New York*, 2 Cir., 1975, 529 F.2d 70. However, these cases, which state generally that a private citizen can be liable under § 1983 if he conspires with a state official, never explicitly considered the question of whether the private actor is liable when the state actor is immune from suit.

6. Note that Judge Choy's opinion in *Briley* refers to the holding in *Haldane* as "dicta." 564 F.2d at 858 n. 10. Classifying the *Haldane* rule as "dicta", however, is dubious at best. The holding that private parties cannot be liable under § 1983 when the state actor is immune from suit was necessary to the Ninth Circuit's affirmation of the lower court's disposition in *Haldane* and that ruling is certainly not "dicta". *Haldane v. Chagnon*, 9 Cir., 1965, 345 F.2d 601.

7. The recent case of *Jennings v. Shuman*, 3 Cir., 1977, 567 F.2d 1213, has been cited for the

proposition that the Third Circuit has abandoned the majority rule. However, a careful reading of that case demonstrates that the court was not presented with the question of whether a private defendant can be held liable under § 1983 when the state actor is immune from suit. *See Hazo v. Geltz*, 3 Cir., 1976, 537 F.2d 747; *Waits v. McGowan*, 3 Cir., 1975, 516 F.2d 203.

8. As noted in footnote 5, the current position of the Seventh Circuit is somewhat uncertain due to the recent en banc opinion in *Sparkman v. McFarlin*, 7 Cir., 1979, 601 F.2d 261. The per curiam opinion in that case affirmed the lower court's dismissal of § 1983 conspiracy charges against the private defendants after the state was held immune from suit. Whether this result was reached based on the Seventh Circuit's earlier adoption of the majority rule, *Hansen v. Ahlgrimm*, 7 Cir., 1975, 520 F.2d 768; *French v. Corrigan*, 7 Cir., 1970, 432 F.2d 1211, or upon a new rule that the conspiracy was not alleged with sufficient particularity is difficult to ascertain. *See Sparkman v. McFarlin*, 7 Cir., 601 F.2d 261, 1979 (Fairchild, C. J., concurring), (Pell, J., concurring), (Sprecher, J., concurring), (Tone, J., concurring).

Detractors of the rule argue that, however firmly established, there was never an adequate rationale to sustain it, and in any event it cannot withstand rigorous analysis. We refute such contentions.

The policy rationale supporting the rule should be self-evident to anyone familiar with the burgeoning number of § 1983 suits and aware of the impact of this phenomenon on our federal judicial system. Today's opinion alters dramatically the relationship between state and federal courts. Henceforth, anyone dissatisfied with the result of litigation in state court can allege a "conspiracy" sufficient to obtain federal court review of his claim.[9] As one court put it:

"This action is a clear attempt, despite plaintiff's assertion to the contrary, to obtain a review and a retrial of the State Court proceedings. The fact that a defeated litigant is prepared to charge a 'conspiracy' recklessly or otherwise and recite in haec verba the language of the Civil Rights Act does not give a right of review in the Federal Courts. To uphold the claim here advanced upon such conclusory allegations 'would open the door wide to every aggrieved litigant in a state court proceedings, and set the federal courts up as an arbiter of the correctness of every state decision.'

"This case demonstrates forcibly the wisdom of the public policy which grants immunity to judicial and other officials for acts performed in the discharge of their duties. If in circumstances such as this defendants may be made to answer for their determinations, not only would the independence of the judiciary be undermined, but a ready means would be at hand to paralyze the entire judicial system."

*French v. Corrigan*, 7 Cir., 1970, 432 F.2d 1211, 1213–14 (quoting *Morgan v. Sylvester*, D.C., 125 F.Supp. 380, aff'd, 2 Cir., 220 F.2d 758, *cert. den.*, 350 U.S. 867, 76 S.Ct. 112, 100 L.Ed. 768).

Judge Sprecher, in his concurring opinion in *Sparkman v. McFarlin*, 7 Cir., 601 F.2d 261 at 267, 1979, sets forth quite clearly the policy considerations supporting the rule now abandoned by this court:

The first is that frivolous civil rights actions should be discouraged. Second, the federal courts, under the guise of civil rights, should not monitor and furnish a remedy for each losing party in every state court proceeding, particularly when the state merely furnishes the forum, has no interest in the outcome, and the state judge does no more than preside over a case presented to him by performing discretionary acts, judicial functions and the normal duties of his office. Third, private persons who are victims of, or witnesses to, a crime should not be discouraged from reporting the crime or from following the advice of a prosecuting attorney as to whether to lodge a formal complaint against, or to appear as a witness against, the perpetrator. Similarly, in civil matters, private persons should not be discouraged from or penalized for seeking the aid or judicial approval of a court before embarking upon activities of ambiguous legality. This is particularly important since it can be presumed that if the action is unconstitutional the judge will be more likely to prevent it than the individual engaging in self-help will be to refrain from engaging in it. Fourth, permitting conspiracies to be claimed which include immune judges may expose a judge to the time-consuming effort and chilling effect of submission to discovery and the appearance as a witness. Finally, if a judge condones a particular course of conduct, it seems manifestly unfair that the judicial expert should be immunized from attack but that the untutored lay person should be vulnerable to costly

---

**9.** As noted by the majority: "Every trial (or appeal) in state courts, civil or criminal, carries the potential for a conspiracy claim, one that the judge (or judges) and whatever other participants the pleader's fancy may light upon acted in knowing concert to deny federal rights protected by section 1983." Majority opinion p. 980.

attack for participating in the same activity as the judge.[10]

Today's majority opinion spends little time with such policy considerations. The opinion notes that "[m]ischievous damage suits of this sort license the ill-disposed to require judges to appear and testify," but concludes that any such burden will be "comparatively insignificant." Majority opinion at p. 980. Once having given this slight nod toward the policy problems inherent in its holding, the majority spends the rest of its time demonstrating that its decision is analytically palatable.

We doubt that the practical impact of this decision properly may be termed as "comparatively insignificant." Today's decision affords an opportunity for state prisoners possessing sufficient pen and ink to allege a conspiracy between a judge, a prosecutor, and "whatever other participants the pleader's fancy may light upon." Majority opinion at p. 980. If the petitioner can drum up sufficient allegations to withstand a motion to dismiss, he can now effectively hail a state judge or prosecutor before federal court in the course of suing "private" parties.

The history of cases in our own Circuit should be instructive as to the probable impact of the majority's decision on the flow of prisoner appeals to this court. Of the five cases in this Circuit cited earlier as applying the immunity rule, four were brought by incarcerated or indicted plaintiffs. *Slavin v. Curry*, 5 Cir., 1978, 754 F.2d 1256, modified on other grounds 583 F.2d 779; *Perez v. Borchers*, 5 Cir., 1978, 567 F.2d 285, *Humble v. Foreman*, 5 Cir., 1977, 563 F.2d 780; *Hill v. McClellan*, 5 Cir., 1974, 490 F.2d 859.

Apparently the majority is, in fact, aware of the potential its opinion has for opening the door to frivolous conspiracy claims. Somewhat offhandedly the opinion states that "mere conclusory allegations of conspiracy cannot, absent reference to material facts, survive a motion to dismiss." Majority opinion at p. 978. Thus, the court may be imposing a strict pleading requirement upon § 1983 conspiracy actions in order to avoid a barrage of groundless claims. Indeed, at least one judge in the Seventh Circuit has suggested that abolishing the immunity rule and replacing it with a "particularized pleading" rule is the proper solution to the present quandary.[11]

A particularized pleading requirement, however, is at odds with a basic policy underlying federal civil procedure—notice pleading. See Rule 8, Federal Rules of Civil Procedure.

Furthermore, erecting a pleading barrier between the courtroom and ungrounded lawsuits is likely to be an unsatisfactory means of avoiding frivolous litigation, since persons disposed to bring such litigation would probably have little difficulty explicating their alleged grievances with particularity.

---

**10.** Judge Sprecher also lists policy considerations militating for the rule adopted en banc by a majority of this court:

There are of course other policy arguments favoring recovery from private co-conspirators. If a judge should, for example, accept a bribe for performing a judicial act which deprives a person of constitutional rights or should reach an express understanding with another person to violate the constitutional rights of a third person, a remedy should exist against the briber or conspirator regardless of the judge's immunity. It would be illogical to dispense immunity to state actors and then extend that immunity to private persons conspiring with them, narrowing civil rights relief to direct state action only. Civil rights cases should be disposed of by case-to-case attention and not swept away by broad *per se* immunity. If in any particular case competing policy considerations exist, the federal court should be able to balance all such considerations in reaching its result. *Sparkman v. McFarlin*, 7 Cir., 1979, 601 F.2d 261 at 267.

Judge Sprecher, for his part, favored abolishing the immunity rule. In its place, he suggested a rule requiring particularized pleading of § 1983 conspiracy claims. This solution, which seeks to avoid a barrage of conspiracy actions, creates difficulties of its own—the particularized pleading requirement runs contrary to the general federal philosophy of notice pleading.

**11.** *Sparkman v. McFarlin*, 7 Cir., 1979, 601 F.2d 261. (Sprecher, J., concurring).

The majority is seemingly unaware of the inroads it has made into the doctrine of judicial immunity, or of the impact its decision could have on the respective roles of state and federal courts. "All authorities," the majority states, "recognized that when a judge acts in a 'clear absence of all jurisdiction' he is not protected. But any broader or less explicit inroad upon the robe's immunity in an attempt to reach its wearer would invite recurring attempts at enlargement, ruinous in terms of judicial time and funds expended to defend—even successfully—against them." Majority opinion at p. 980.

In our view it is unwise to encroach upon the robe's immunity. The court now abandons a rule of law that has served this and other Circuits well for over a decade, and replaces it with a formulation corrosive to the doctrine of judicial immunity, harmful to the proper functioning of our federal system, and fraught with the possibility of providing the means for frivolous litigation.

We suggest that this decision will not be the last word on this subject and we respectfully dissent.